IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 25-CR-135-RAW |
| | ) |
| FRANK WILLIAM CATRON, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Defendant Frank William Catron is charged in a one-count indictment for being a felon in possession of firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(8), with a forfeiture allegation. Defendant moves to suppress all evidence obtained following a traffic stop and the subsequent search of his vehicle that occurred following a positive dog-sniff. Docket No. 29. The Court referred the Defendant's Motion for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). *See* Docket No. 33. The undersigned Magistrate Judge conducted a suppression hearing on October 30, 2025. *See* Docket No. 40. For the reasons set forth below, the undersigned Magistrate Judge recommends Defendant's Opposed Motion to Suppress and Brief in Support [Docket No. 29] be GRANTED.

## FACTUAL SUMMARY

Chickasaw Nation Lighthorse Officers Rylee McGehee and Seth Bittle were on duty in Ada, Oklahoma, on January 11, 2025, when they witnessed a black Chevrolet truck driving with a cracked windshield and modified exhaust at an intersection. Gov't Hr'g Ex.

No. 5, at 00:01-00:16.[1] The officers turned left at the intersection and then moved into the right lane, positioning themselves behind the truck. *Id*. at 00:25-00:35.[2] After a few moments the truck moved to the left lane and Officers McGehee and Bittle followed. *Id.* at 00:35-00:48. The truck then turned left, pulled into the parking lot of a closed business, and came to a stop. *Id.* at 00:48-00:53. The officers pulled in behind the truck and activated their emergency lights for the first time. *Id.* at 00:54-1:01.

Officer McGehee approached the driver's side of the vehicle and requested Defendant Frank Catron's driver's license. Gov't Hr'g Ex. 1 at 12:38:00-12:38:40. Defendant was the operator and sole occupant of the vehicle. *Id.* Upon returning to the patrol vehicle, Officer Bittle asked Officer McGehee whether there was anything in open view and if Defendant appeared nervous or shaky. *Id.* at 12:39:14-12:39:45. At the suppression hearing, Officer McGehee testified that at the time of this stop he had been employed by the Chickasaw Lighthouse Patrol for approximately a month and a half and was in the probationary period of his employment, and Officer Bittle testified he routinely asked these questions when training new officers. In response to officer Bittle's questions, Officer McGehee indicated he did not see anything in open view and Defendant was talkative but not overly shaky. *Id.*

Officer Bittle then took Defendant's driver's license and checked whether he had any outstanding warrants and reviewed his criminal history. Gov't Hr'g Ex. 1, at 12:39:37-

---

[1] Times for Gov't Hr'g Ex. 5 reflect the elapsed time on the video progress bar.
[2] Times for Gov't Hr'g Ex. 1 reflect the timestamp located in the upper right-hand corner of the video. Gov't Hr'g Exs. 1 & 5 were the only exhibits offered and admitted during the suppression hearing.

12:50: The search revealed an outstanding arrest warrant arising out of Cherokee County, Oklahoma, and drug related charges from approximately a month earlier, i.e., December 2024. *Id.* at 12:41:10-12:31:45. While running these checks, Officer Bittle asked Officer McGehee if there was sufficient reasonable suspicion to call K-9 handler, Sergent Trenton Ellis. 12:40:47-12:41:00. Officer McGehee did not answer this question; however, at the suppression hearing Officer McGehee testified he did not believe he had sufficient reasonable suspicion. Conversely, Officer Bittle testified, based on the Defendant's driving behavior and prior drug related charges, he did believe there was sufficient reasonable suspicion to call Sergent Ellis. After checking Defendant's prior charges, Officer Bittle returned Defendant's driver's license to Officer McGehee and texted Sergent Ellis requesting that he come to their location. *Id.* at 12:41:45-12:41:48.

Officer McGehee subsequently ordered Defendant out of his vehicle and conducted a pat-down search of his person. *Id.* at 12:42:33-12:43:25. Officer McGehee told Defendant he needed to address his vehicle's cracked windshield and modified exhaust system, but he would be "kick[ed] loose" after they hear from Cherokee County regarding the warrant. *Id.* at 12:44:10-12:44:21. Shortly thereafter, dispatch reported Cherokee County did not want Defendant arrested on the warrant. *Id.* at 12:46:00–12:46:32. Sergeant Ellis arrived on scene virtually simultaneously. *Id.* at 12:46:17. Officer McGehee informed Defendant that Cherokee County did not want him arrested on the warrant but instructed Defendant to "hang tight." *Id.* at 12:46:27-12:46:38. Officer McGehee then rendezvoused Officer Bittle and Sergeant Ellis at the back of the patrol vehicle where he explained to Officer Bittle and Sergeant Ellis that Defendant exhibited nervous behavior early in the traffic stop

3

and admitted to being nervous around police. *Id.* at 12:46:42-12:45:50. Also at this time, Officer Bittle reiterated that Defendant had a drug charge a month prior and asked McGehee if he believed there was enough reasonable suspicion for Sergent Ellis to run his K-9 around Defendant's vehicle. *Id.* at 12:46:52-12:47:08. McGehee responded in the affirmative, and Sergent Ellis instructed Officer McGehee to articulate his reasonable suspicion. *Id.* at 12:47:08-12:47:16. Officer McGehee noted Defendant (i) pulled over prior to the activation of any emergency lights, (ii) engaged in nervous behavior, including "rambling" and looking back at him while he was approaching his vehicle, (iii) indicated he was nervous, and (iv) had a drug-related charge approximately a month prior. *Id.* at 12:47:16-12:47:55. After this Officer Bittle stated, "[w]e can clean that up a little bit later on." *Id.* at 12:47:55-12:48:00. When questioned about what he meant by this statement at the suppression hearing, Officer Bittle testified that Officer McGehee's articulation was "choppy and nervous."

Sergent Ellis then returned to Defendant, informed him he was getting a warning for the traffic related offenses, and told him he was free to go. 12:48:00-12:48:23. Officer McGehee, however, was still in possession of Defendant's license at this time. Within seconds of informing Defendant he was free to go, Sergeant Ellis asked for his consent to walk his K-9 around Defendant's vehicle and explained that he would be searching for drugs. *Id.* at 12:48:25-12:48:34. Defendant consented to the search. *Id.* at 12:48:38-12:48:40. The K-9 alerted on the passenger side of the vehicle and a search revealed a pipe, two syringes, an open jar of moonshine, and a rifle. 12:49:50-13:06:00. As Officers McGehee and Bittle began to search the vehicle, Defendant indicated there was a firearm

4

in his vehicle and later admitted to a prior felony conviction. 12:51:20-12:51:24; 13:07:48-13:08:09.

## ANALYSIS

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. Traffic stops, although often short in duration and of limited scope, are a seizure under the Fourth Amendment and "subject to review for reasonableness." *United States v. Mayville*, 955 F.3d 825, 829 (10th Cir. 2020) (citing *Whren v. United States*, 517 U.S. 806, 809-10 (1996)). An officer's mission during a traffic stop includes inquiries into the traffic violation, checking the driver's license, inspecting the automobile's registration and proof of insurance, and determining whether there are outstanding warrants. *Id.* Officers may also conduct a criminal history check in the interest of safety. *Mayville*, 955 F.3d at 829. A dog sniff, however, is not "fairly characterized as part of the officer's traffic mission." *Rodriguez v. United States*, 575 U.S. 348, 356 (2015)

Upon completing the purpose of the traffic stop, "further detention for purposes of questioning unrelated to the initial traffic stop is impermissible unless: (1) the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, or (2) the initial detention has become a consensual encounter." *United States v. Bradford*, 423 F.3d 1149, 1156-68 (10th Cir. 2005). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (internal citations omitted); *Florida v. Royer*, 460 U.S. 491,

500 (1983) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification."). Traffic stops may not last longer than necessary to address the infraction that is the purpose of the stop. *Rodriguez*, 575 U.S. at 354. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* Police may engage in unrelated investigations that do not lengthen the traffic stop; however, absent reasonable suspicion, law enforcement violates the Fourth Amendment if the officer engages in tasks unrelated to the otherwise lawful traffic stop which prolong the stop. *Id*. at 355. "The moment at which reasonable suspicion becomes necessary is known as the '*Rodriguez*[3] moment[.]'" *United States v. Leon*, 80 F.4th 1160, 1165 (10th Cir. 2023) (quoting *United States v. Batara-Molina*, 60 F.4th 1251, 1255 n.1 (10th Cir. 2023).

### I.     *Rodriguez* Moment

The Government, in its response brief, concedes that once Officer McGehee informed Defendant that Cherokee County was not requesting Defendant be held on the warrant, the traffic stop was complete. Docket No. 39, at p. 5; Gov't Hr'g Ex. 1, at 12:46:33. Accordingly, this is the *Rodriguez* moment and absent consent or reasonable suspicion any continued detention of Defendant violated the Fourth Amendment. The Government does not contend the encounter became consensual prior to Defendant consenting to the dog-sniff, but asserts that Officers McGehee and Bittle had reasonable suspicion to continue to detain Defendant while they met with Sergeant Ellis to discuss

---

[3] *Rodriguez v. United States*, 575 U.S. 348, 355 (2015).

whether there was sufficient reasonable suspicion to run a dog sniff of Defendant's vehicle. Thus, the inquiry is whether the facts known to the officers at the time of the *Rodriguez* moment established reasonable suspicion. *United States v. Frazier*, 30 F.4th 1165, 1179 (10th Cir. 2022).

## II.     Reasonable Suspicion

"Reasonable suspicion accrues when an officer possesses a 'particularized and objective basis for suspecting criminal conduct under a totality of the circumstances.'" *United States v. Cortez*, 965 F.3d 827, 934 (10th Cir. 2020) (quoting *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015)). "While reasonable suspicion cannot be based upon a mere hunch, it also need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Kitchell*, 653 F.3d 1206 (10th Cir. 2011). The government bears the burden of demonstrating reasonable suspicion, but this standard "is not an onerous one[,]". *Frazier*, 30 F.4th at 1174, and the Court is to "accord deference to an officer's ability to distinguish between innocent and suspicious actions[.]" *United States v. Gandara-Salinas*, 327 F.3d 1127, 1129 (10th Cir. 2003).

Based on the comments made throughout Officer McGehee's body camera footage and the testimony of Sergeant Ellis and Officers McGehee and Bittle, the factors attributable to reasonable suspicion included: (i) Defendant pulling over prior to the activation of any emergency lights, (ii) Defendant's nervous behavior, including being talkative and looking back at Officer McGehee as he approached Defendant's vehicle, and (iii) Defendant's recent drug related charges.

*Nervous Behavior.* Nervous behavior is a common and natural reaction to interactions with the police. As such, the Tenth Circuit has consistently held that nervousness is "of limited significance" in assessing whether reasonable suspicion exists and, "[o]nly extraordinary and prolonged nervousness can weigh significantly in the assessment of reasonable suspicion." *United States v. Santos*, 403 F.3d 1120, 1127 (10th Cir. 2005); *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001). "'[S]pecific indicia that the defendant's nervousness was extreme' is required, and the court will not 'credit an officer's naked assertion.'" *United States v. Raniewicz*, 2023 WL 6180473, at *6 (N.D. Okla. Sept. 22, 2023) (quoting *United States v. Simpson*, 609 F.3d 1140, 1148 (10th Cir. 2010) (alterations in original). Based on a review of Officer McGehee's body worn camera footage, the undersigned Magistrate Judge finds Defendant did not exhibit extraordinary or prolonged nervous behavior.

Although Defendant admits to being nervous around law enforcement and does appear talkative, Defendant offers calm even responses to Officer McGehee's and Bittle's questions, his voice remains steady, he does not evade the officers' questions, and as Officer McGehee notes in the body camera footage, he does not appear shaky. Further, nothing in the record indicates Officers McGehee or Bittle had prior knowledge of Defendant such that they could assess whether these behaviors were indicative of extraordinarily nervous behavior and neither officer testified that they viewed his behavior as extraordinarily nervous.[4] *Simpson*, 609 F.3d at 1147-48 ("[U]nless the police officer has

---

[4] Although the record reflects Sergeant Ellis had a prior experience with Defendant, Sergeant Ellis had no contact with Defendant prior to the *Rodriguez* moment.

8

had significant knowledge of a person, it is difficult, even for a skilled police officer, to evaluate whether a person is acting normally for them or nervously."). As such, the undersigned Magistrate Judge finds this factor of limited significance.

*Preemptive Stop.* Similarly, under the facts of this case, the undersigned Magistrate Judge finds that Defendant pulling over prior to the activation of emergency lights minimally contributes to reasonable suspicion and cannot, on its own, create reasonable suspicion. *See United States v. Jenson*, 462 F.3d 399, 405 (5th Cir. 2006) (finding a "modest delay in stopping time does not by itself . . . give rise to reasonable suspicion.") To be clear, preemptively pulling over prior to the activation of emergency lights does appear to be a physical manifestation of a guilty conscience; however, given the circumstances of the stop here, it appears of minimal value. Indeed, it seems reasonable that a driver of a vehicle with a broken windshield would preemptively pull over upon realizing the police are following him. In contrast, it does not appear that preemptively pulling over supports a reasonable suspicion of criminal activity beyond a mere traffic violation and, pragmatically, it reduces a person's time to conceal anything illegal. *See Shaw v. Schulte*, 36 F.4th 1006, 1015 (10th Cir. 2022) ("Turning to the amount of time it took Blaine to stop, we assign this factor minimal value given the circumstances of the stop. To be sure, we have frequently concluded that an individual's failure to promptly stop in response to a police officer attempting to conduct a traffic stop supports reasonable suspicion of criminal activity beyond a mere traffic violation. . . . However, the reasonable-suspicion calculus is fact specific and based on common sense.") (internal citations omitted).

*Prior Criminal History.*  Lastly, the undersigned Magistrate Judge finds Defendant's recent drug charge is consequential but not determinative to the reasonable suspicion inquiry. Undeniably, "people with prior convictions retain Fourth Amendment rights; they are not roving targets for warrantless searches." *Santos*, 403 F.3d at 1132. As such, prior criminal history standing alone is insufficient to create reasonable suspicion, "[b]ut in conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus." *Simpson*, 609 F.3d at 1147.

*Totality of the Circumstances.* The undersigned Magistrate Judge finds these collective circumstances do not create a reasonable suspicion that criminal activity was afoot. The Tenth Circuit has found factors more persuasive than those presented here a "close call." In *United States v. Simpson*, 609 F.3d 1140, (10th Cir. 2010) officers witnessed Mr. Simpson make two lane changes without the required two second delay after activating his turn signal and initiated a traffic stop. 609 F.3d at 1143. Through the traffic stop officers learned Mr. Simpson had previous criminal history involving drug trafficking, and found Mr. Simpson: (i) appeared evasive when questioned about his travel plans and recounted bizarre travel plans (*i.e.*, travelling from Nebraska to Reno, New Mexico to stay a single night at a friend's house), and (ii) exhibited extreme signs of nervousness (*i.e.*, full body trembles) even after being told he was being left off with a warning, *id.* at 1147-52. Ultimately, the Tenth Circuit was "asked to decide whether a police officer who has lawfully stopped a person is allowed to continue to detain that person for a short period of time when that person has a criminal record of drug trafficking, is acting extremely nervous in a situation where others typically relax and provides evasive answers that describe a

10

fairly implausible travel plan." *Id.* at 1153. It found these factors presented "a close call" but concluded officers had sufficient reasonable suspicion of criminal activity. The factors set forth in this case fall below the "close call" in *Simpson*. Although Defendant had a recent criminal charge, unlike the Defendant in *Simpson,* he did not appear overly nervous. Additionally, although Defendant pulling over of his own volition does contribute to reasonable suspicion, the undersigned Magistrate Judge does not find it as significant as the evasive answers and implausible travels plans as described in *Simpson*.

The Court here is left with the officer's hunch that Defendant's vehicle contained drugs, or evidence of another crime, based on the fact he (i) pulled over prior to the activation of any emergency lights after noticing he was being followed, (ii) exhibited minor nervous behavior, and (iii) had a recent drug charge. Ultimately, this amounts to "'unparticularized hunches' based on indicators 'so innocent or susceptible to varying interpretations as to become innocuous' [and] cannot justify a prolonged traffic stop or vehicle search." *United States v. White*, 584 F.3d 935, 950 (10th Cir. 2009) (quoting *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1998)).

Here, the purpose of the stop—to investigate Defendant's cracked windshield and modified exhaust—was completed once Officer McGehee learned Cherokee County did not want Defendant held on the outstanding warrant. Nonetheless, Officer McGehee continued to detain Defendant while he, Officer Bittle, and Sergeant Ellis, reviewed

whether they had reasonable suspicion to conduct a dog-sniff of Defendant's vehicle.[5] Govt. Hr'g Ex. 1, at 12:46:33-12:48:23.

Accordingly, the undersigned Magistrate Judge finds a Fourth Amendment violation occurred when Sergeant Ellis and Officers McGehee and Bittle prolonged the duration of the traffic stop beyond the "time reasonably required to complete th[e] mission of issuing a ticket for the violation." *Rodriguez*, 575 U.S. at 348-49 (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)); *see United States v. Jacobo-Rosas*, 625 F. Supp. 3d 1174 (D.N.M. Sept. 6, 2022) ("In conclusion, the officers did not have reasonable suspicion to lawfully extend the stop at the time they strategized about investigating other crimes or at the point defendant was asked to exit the Chrysler with his dog. Because they lacked reasonable suspicion to extend the stop, Defendant's seizure violated the Fourth Amendment.").

### III. Defendant's Consent

The Government nonetheless maintains the search of Defendant's vehicle was permissible based on his consent. "A search preceded by a Fourth Amendment violation

---

[5] At best, the traffic stop was prolonged for approximately one minute and fifty seconds. Regardless, "[e]ven *de minimis* delays caused by unrelated inquiries violate the Fourth Amendment in the absence of reasonable suspicion." *United States v. Frazier*, 30 F.4th 1165, 1173 (10th Cir. 2022) (citing *United States v. Mayville*, 955 F.3d 825, 830 (10th Cir. 2020). In a concurring opinion in *United States v. Hayes*, 62 F.4th 1271, 1273-78 (10th Cir. 2023) (per curiam), Judge Baldock reasoned that the "*de minimis*" statement in *Mayville* was obiter dictum and cautioned against finding *de minimis* delays unconstitutional *per se*. 62 F.4th at 1276. Instead, he emphasized that the focus should be on the reasonableness of the delay. *Id.* at 1273-78. Ultimately, Judge Baldock found the five second delay in *Hayes* was "negligibly burdensome" and a reasonable safety precaution given the risk of violence or resistance present in that case. *Id.* at 1278. Here, the traffic stop was delayed well beyond a mere five seconds and the stop was not extended as a safety precaution.

remains valid if the consent to search was voluntary in fact under the totality of the circumstances." *United States v. Fernandez*, 18 F.3d 874, 882 (10th Cir. 1994). Where a Fourth Amendment violation has occurred, "the government bears the heavy burden of showing that the primary taint of that violation was purged. To satisfy this burden, 'the government must prove, from the totality of the circumstances, a sufficient attenuation or 'break in causal connection between the illegal detention and the consent.'" *United States v. Caro*, 248 F.3d 1240, 1247 (10th Cir. 2001) (quoting *United States v. Gregory*, 79 F.3d 973, 979 (10th Cir. 1996); *United States v. McSwain*, 29 F.3d 558, 562 (10th Cir. 1994). When making this assessment no single fact is dispositive but three factors "are especially important: (1) the temporal proximity of the illegal detention and consent, (2) any intervening circumstances, and (3) the purpose and flagrancy of any official misconduct." *Id.* (citing *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975) & *Gregory*, 79 F.3d at 979). Critically, the Government does not provide any argument as it pertains to these factors but, instead, relies solely on the argument that the officers had reasonable suspicion to prolong the traffic stop. Nonetheless, the undersigned Magistrate Judge proceeds to assess these factors.

*Temporal Proximity.* The first factor weighs heavily against finding the taint cleansed as there was a short duration of time between the time Defendant was illegally seized and his consent to the dog sniff. After not being satisfied with Officer McGehee's articulation of reasonable suspicion, Sergeant Ellis informed Defendant he was free to leave and, within the span of a few seconds, requested Defendant's consent for a dog sniff of his vehicle. However, Officer McGehee still had possession of Defendant's driver's

13

license at this time and, as both Officer McGehee and Bittle testified, without his driver's license Defendant was in fact not free to leave. *United States v. Soto*, 988 F.2d 1548, 1557 (10th Cir. 1993) ("Unless the officer has returned the driver's documentation, the driver is not free to go, and the encounter is not consensual."). Thus, because Defendant's driver's license was never returned, the illegal seizure was ongoing when he provided his consent. *See McSwain*, 29 F.3d at 562 (finding first factor "weigh[ed] heavily against finding the taint cleansed" where the consent occurred "only a few minutes after being illegally detained.").

*Intervening Circumstances.* The second factor requires "proof of facts or events which ensure that the consent provided . . . [was] not the fruit of the illegal [seizure]. The facts or events must create a discontinuity between the illegal [seizure] and the consent such that the original illegality is weakened and attenuated." *Gregory*, 79 F.3d at 980. "Some examples of intervening circumstances include 'carefully explain[ing]' a consent form and advising an individual of the right to withhold consent, . . . 'release from custody, an appearance before a magistrate, or consultation with an attorney[.]'" *United States v. Fox*, 500 F.3d 1254, 1261 (10th Cir. 2010) (internal citations omitted). Here, Sergeant Ellis told Defendant he was free to go prior to requesting his consent. However, this release was hollow without the return of Defendant's driver's license. In light of this, the undersigned Magistrate Judge finds no intervening circumstances.

*Purposeful or Flagrant Misconduct.* Lastly, the undersigned examines the purpose and flagrancy of the official misconduct. "[P]urposeful and flagrant misconduct is generally found where: '(1) the impropriety of the official's misconduct was obvious or the

official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed in the hope that something might turn up.'" *Fox*, 500 F.3d at 1261 (quoting *Simpson*, 439 F.3d at 496. The record does not reflect the misconduct here was obvious or that any of the officials knew the prolonged seizure of Defendant was unconstitutional. Instead, based on Officer Bittle's and Sergeant Ellis's testimony, it appears the stop was prolonged to train Officer Ellis who had been with the Chickasaw Nation Lighthorse Patrol for only a short period of time.

Conversely, the misconduct does appear to be investigatory in design and arranged in the hopes something would turn up. In this regard, Officer Bittle testified that upon learning of Defendant's recent prior criminal drug charges he wanted to search Defendant's vehicle, and it was shortly after learning of his prior charges he requested Sergeant Ellis's presence on scene. Despite this, Officer McGehee testified at the suppression hearing that he previously testified in a tribal court proceeding in connection to this case that he did not believe he had reasonable suspicion to call Sergeant Ellis. Similarly, Sergeant Ellis testified he was unsatisfied with Officer McGehee's articulation of reasonable suspicion and, although Officer McGehee could have articulated his reasonable suspicion more artfully, neither Officer McGehee's or Officer Bittle's testimony identified any additional factors as contributing to reasonable suspicion. Moreover, Officer Bittle's comment that the officers could "clean up" the basis for reasonable suspicion "a little bit later on" also intimates the misconduct was investigatory in design and executed as a fishing expedition. Because the misconduct was not obvious but was investigatory in design and executed with

the hope something would turn up, the undersigned Magistrate Judge finds this third factor is neutral, neither weighing for or against finding the taint of the illegal seizure had been cleansed.

For the foregoing reasons and, in light of the Government's failure to address these factors, the undersigned Magistrate Judge finds the Government has not met its heavy burden to show the taint of the Fourth Amendment violation had been purged at the time Defendant consented to a dog sniff of his vehicle. *See Raniewicz*, 2023 WL 6180473, at *6 ("Further, even if Mr. Raniewicz had consented, under the circumstances, the consent was insufficient to purge the taint of his unlawful detention. As previously stated, at the time Office Butler requested consent, he had not informed Mr. Raniewicz that he was free to go. Further the request came only one minute and ten seconds after Officer Butler had given Mr. Raniewicz the written warning, ending the permissible scope of the *Terry* stop. There were no intervening circumstances. Finally, Officer Butler was clearly acting with an intent to investigate criminal conduct unrelated to the traffic stop.") (internal citations and quotations omitted). As such, all statements made and evidence obtained following the *Rodriguez* moment should be suppressed.

## CONCLUSION

Accordingly, the undersigned hereby proposes the findings set forth above and RECOMMENDS that Defendant's Opposed Motion to Suppress Evidence and Brief in Support [Docket No. 29] be GRANTED. Any objections to this Report and Recommendation must be filed by Monday, December 1, 2025. Any objections and

responses shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

    IT IS SO ORDERED this 13th day of November 2025.

                                            **GERALD L. JACKSON**
                                            **UNITED STATES MAGISTRATE JUDGE**